# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>ALEX LUNA | No. 3:05-cr-58 (SRU) |

## RULING ON FIRST STEP ACT MOTION

Alex Luna seeks relief pursuant to the recently passed First Step Act, requesting a reduced sentence following a resentencing on his two remaining counts of conviction from 2006: conspiracy to possess with intent to distribute, and to distribute, 50 grams or more of cocaine base and five kilograms or more of cocaine (count one), and possession with intent to distribute, and to distribute, cocaine (count six). *See* First Step Act Motion ("FSA Mot."), Doc. No. 1462. The government opposes Luna's motion on the basis that the offenses for which Luna was convicted are not "covered offenses" under the First Step Act because they relate to powder cocaine rather than crack cocaine. *See* Opp'n to FSA Mot., Doc. No. 1489. For the following reasons, Luna's motion is **granted**, and he is entitled to a plenary resentencing.

**I.      Background**

On March 14, 2006, Luna pled guilty, without a plea agreement, to three counts of a Superseding Indictment. *See* Superseding Indictment, Doc. No. 419; Min. Entry, Doc. No. 483. Luna pled guilty to counts one, six, and twelve. *See* Min. Entry, Doc. No. 483. Luna was charged in count one with conspiracy to possess with intent to distribute, and to distribute, 50 grams or more of cocaine base, known commonly as "crack cocaine," and five kilograms or more of cocaine, or "powder cocaine," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. *See* Judgment, Doc. No. 999. In count six, Luna was charged with possession with intent

to distribute, and to distribute, cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *See id.* In count twelve, Luna was charged with unlawful possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See id.*[1] In general, the government alleged that Luna was the leader of a large drug-dealing enterprise in Danbury, Connecticut. *See* Plea Tr., Doc. No. 1157, at 33. The government claimed that its evidence would have established that the drug ring sold both powder cocaine and crack cocaine. *See id.* at 32–36 (discussing evidence from the course of the investigation including wiretaps, undercover purchases, surveillance, controlled buys, and confidential informants).

I held a sentencing hearing for Luna on January 26, 2007, but, after over three hours of argument, I did not impose a sentence that day. *See* Min. Entry, Doc. No. 935. On April 3, 2007, I held another sentencing hearing for Luna. *See* Min. Entry, Doc. No. 1004. There, I sentenced Luna to 360 months' imprisonment on each of counts one and six and 120 months' imprisonment on count twelve, all to run concurrently.[2] *See* Judgment, Doc. No. 999. I also sentenced Luna to ten years' supervised release on count one, six years' supervised release on count six, and three years' supervised release on count twelve, all to run concurrently. *See id.* Luna has been incarcerated since his arrest on March 4, 2005; the BOP calculates his release date as September 2, 2031. FSA Mot., Doc. No. 1462, at ¶ 6. Through his First Step Act motion, Luna seeks a reduced sentence following a resentencing on all counts. *See id.* at ¶ 8.

---

[1] When Luna arrived at the Bridgeport courthouse on March 14, he believed that he would be pleading guilty to a ten years' mandatory minimum sentence under count one; however, the government had filed a second-offender information that very day that doubled Luna's mandatory minimum on count one to 20 years. *See* Information, Doc. No. 482. Luna explained that he was "not ready to plead guilty right now" and so the court recessed for almost two hours until Luna was prepared plead guilty. *See* Plea Tr., Doc. No. 1157, at 4–5.

[2] Luna has already served the full 120 months' sentence on count twelve. *See* Opp'n to FSA Mot., Doc. No. 1489, at 1 n.1.

2

## II.     Discussion

### A. Eligibility for Relief

Following Luna's sentencing, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220; 124 Stat. 2372 ("Fair Sentencing Act"), which "'reduced the statutory penalties for cocaine base[] offenses' in order to 'alleviate the severe sentencing disparity between crack and powder cocaine.'" *United States v. Sampson*, 360 F. Supp. 3d 168, 169 (W.D.N.Y. 2019) (quoting *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016)). In 2018, Congress passed, and the President signed into law, the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"). Section 404 of the First Step Act made retroactive some provisions of the Fair Sentencing Act. *See* First Step Act § 404(b). First Step Act relief is available to those convicted of a "covered offense," which section 404 defines as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." First Step Act § 404(a).

Because the Fair Sentencing Act modified the penalties for a crime involving 50 grams or more of crack cocaine, that crime, if committed before August 3, 2010, is a "covered offense" for purposes of the First Step Act. *See* First Step Act § 404(b). At the time of Luna's sentencing, pre-Fair Sentencing Act, cases involving 50 grams or more of crack cocaine fell under 21 U.S.C. § 841(b)(1)(A) and carried a mandatory minimum penalty of ten years' incarceration and a maximum of life. *See United States v. Gonzalez*, 420 F.3d 111, 121 (2d Cir. 2005). Post-Fair Sentencing Act, cases involving 50 grams or more of crack cocaine fall under 21 U.S.C. § 841(b)(1)(B)(iii) and carry a mandatory minimum penalty of five years' incarceration and a maximum penalty of forty years' incarceration. *See* Fair Sentencing Act § 2. Therefore, offenses involving 50 grams or more of crack cocaine are "covered offenses" under the First Step Act.

The Fair Sentencing Act did not modify the penalties for a crime involving five kilograms of powder cocaine, however, and powder cocaine offenses are therefore not "covered offenses" for purposes of the First Step Act. At the time of Luna's sentencing, pre-Fair Sentencing Act, cases involving five kilograms of cocaine fell under 21 U.S.C. § 841(b)(1)(A) and carried a mandatory minimum penalty of ten years' incarceration and a maximum of life. 21 U.S.C. § 841(b)(1)(A)(ii)(II). The penalties remained unchanged after the Fair Sentencing Act.

Luna argues that he was convicted of a "covered offense" on count one because his conviction, in part, was based on conspiring to possess with intent to distribute, and to distribute, 50 grams of crack cocaine, the penalties for which were changed by the Fair Sentencing Act. *See* Mem. in Supp., FSA Mot., Doc. No. 1480, at 6–7. Both the United States Probation Office and the government argue that Luna's conviction on count one is not a "covered offense" under the First Step Act because his conviction, in part, was based on conspiring to possess with intent to distribute, and to distribute, five kilograms of powder cocaine, the penalties for which were *not* changed by the Fair Sentencing Act. *See* Opp'n to FSA Mot., Doc. No. 1489, at 4–7; PSR Addendum, Doc. No. 1463, at 3.

I agree with Luna. In count one, Luna was charged with (and convicted of) violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 in two ways: (1) conspiring to possess with intent to distribute, and to distribute, five kilograms of powder cocaine, and (2) conspiring to possess with intent to distribute, and to distribute, 50 grams of crack cocaine. The government could have charged Luna with (and convicted him of) two counts of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 instead of one. In that case, Luna's conviction based on powder cocaine undoubtedly would not be a "covered offense" under the First Step Act because the Fair Sentencing Act did not modify the penalties for a crime involving five kilograms of powder

4

cocaine. But Luna's conviction based on crack cocaine undoubtedly *would* be a "covered offense" under the First Step Act because the Fair Sentencing Act *did* modify the penalties for a crime involving 50 grams or more of crack cocaine. The availability of First Step Act relief cannot be so fickle: it cannot turn on how the government charged a case or drafted an indictment. Denying Luna relief under the First Step Act because the government charged a single count of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 instead of two would allow the U.S. Attorney's Office—rather than Congress—to define what is a "covered offense" under the First Step Act.

In addition, I have already explained—in granting the First Step Act motion of Luna's co-defendant, Bobby Medina, *see United States v. Medina*, 2019 WL 3769598 (D. Conn. July 17, 2019)—that I believe statutory analysis of the First Step Act compels the same result. It is the statute of conviction, not actual conduct, that drives a determination of First Step Act eligibility. *See United States v. Allen*, 384 F. Supp. 3d 238, 241 (D. Conn. 2019) ("Under the plain language of [section 404], whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated." (internal citations and quotation marks omitted)). A growing number of courts in the Second Circuit have reached the same conclusion. *See, e.g.*, *Medina*, 2019 WL 3769598, at *3; *United States v. Davis*, 2019 WL 1054554, at *3 (W.D.N.Y. Mar. 6, 2019); *United States v. Simons*, 375 F. Supp. 3d 379, 387 (E.D.N.Y. 2019) ("Any argument that Simons is ineligible for relief on the basis that his actual conduct involved distribution of '280 grams or more of cocaine base,' triggering the § 841(b)(1)(A) penalties and a ten-year minimum term of imprisonment, is unsound."); *United States v. Williams*, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019); *United States v. Rose*, 379 F. Supp. 3d 223, 230 (S.D.N.Y. 2019) (concluding that the defendant was eligible for First Step Act relief based on the

quantity of crack cocaine listed in the indictment despite a judicial finding of a different amount, the penalties for which were not changed by the Fair Sentencing Act); *United States v. Martin*, 2019 WL 2571148, at *3 (E.D.N.Y. June 20, 2019).

Courts in other circuits have reached the same conclusion. *See United States v. Mack*, 2019 WL 3297495, at *10–11 (D.N.J. July 23, 2019); *United States v. Lee*, 2019 WL 2617262, at *1 (M.D. Fla. June 26, 2019) ("Section 404(b) says nothing about relevant conduct. A covered offense is one that violated a federal statute; it is that conviction, and not underlying relevant conduct, that determines eligibility under plain language of the First Step Act.") (internal citations omitted); *United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act."); *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019) ("[T]he sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 to determine eligibility[.]"); *United States v. Dodd*, 372 F. Supp. 3d 795, 797 (S.D. Iowa 2019) ("The First Step Act [] applies to offenses and not conduct."); *United States v. Barber*, 2019 WL 2526443, at *2 (D.S.C. June 19, 2019); *United States v. White*, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 14, 2019) (collecting dozens of cases).

Simply stated, Luna was charged with, pled guilty to, and was sentenced for an offense involving, at least in part, 50 grams or more of crack cocaine, the penalties for which were changed by the Fair Sentencing Act. Accordingly, Luna is eligible for relief under the First Step Act because he was convicted of a covered offense that was committed before August 3, 2010. His conviction on count one was premised, at least in part, on his violation of 21 U.S.C. § 841(b)(1)(A), the statutory penalties for which were reduced by section 2 of the Fair Sentencing

Act of 2010. *See* Judgment, Doc. No. 999 (sentenced in part for violation of 21 U.S.C. § 841(b)(1)(A)); *see also Williams*, 2019 WL 2865226, at *3. Therefore, Luna's offense was a "covered offense," and he is eligible for relief under the First Step Act.

Denying Luna relief under the First Step Act because he was convicted of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 based on his activities involving both crack cocaine and powder cocaine would also limit the remedial nature of the First Step Act. "Both the Fair Sentencing Act and the First Step Act have the remedial purpose of mitigating the unfairness created by the crack-to-powder cocaine ratio, and the statutes should be construed in favor of broader coverage." *Rose*, 379 F. Supp. 3d at 229; *see also id.* at 229–30 ("To preclude defendants from seeking relief on the basis of facts that may have had little significance at the time they were determined would be draconian and contrary to the remedial purpose of the First Step Act."); *Allen*, 384 F. Supp. 3d at 242 ("Congress wanted to further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact. Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties." (internal citations omitted)). Further, ambiguities in the First Step Act "must be resolved in the defendant's favor." *Rose*, 379 F. Supp. 3d at 229; *see also Martin*, 2019 WL 2571148, at *2 (applying rule of lenity to First Step Act to "resolve[] ambiguities in favor of the defendant").

I am aware of at least one other court that has explicitly considered the question at issue here—the defendants there were also convicted in the same count of conspiracy to distribute and to possess with intent to distribute both five kilograms of powder cocaine and 50 grams of crack cocaine—that has also concluded that the defendants were eligible for relief under the First Step

7

Act. *See Mack*, 2019 WL 3297495, at *10–13 (noting the unfairness of an opposite result because the government had "lump[ed] together powder cocaine and crack cocaine purchases and sales as the essence" of the drug operation).[3]

Numerous other courts that have considered the issue in slightly varied forms—when a defendant was convicted of one count that charged violations of drug laws based on both crack cocaine and some other substance—have found that the count of conviction was a "covered offense" for purposes of the First Step Act. *See, e.g.*, *Allen*, 384 F. Supp. 3d at 243 (conspiracy to distribute five kilograms or more of powder cocaine and 50 grams or more of crack cocaine);[4] *Davis*, 2019 WL 1054554, at *1 (conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of powder cocaine and 50 grams or more of crack cocaine); *United States v. Shields*, 2019 WL 3003425, *2–3 (M.D. Pa. July 10, 2019) (conspiracy to possess with intent to distribute heroin and 50 grams or more of crack cocaine); *United States v. Buchanan*, 2019 WL 2366818, at *1–2 (N.D. Ind. June 5, 2019) (conspiracy to distribute and possess with the intent to distribute 500 grams or more of powder cocaine and 28 grams or more of crack cocaine); *United States v. Logan*, 2019 WL 498519, at *1 (D. Kan. Feb. 8, 2019) (conspiracy to distribute marijuana and 50 grams or more of crack cocaine); *United States v. Johnson*, 2019 WL 2590951, at *1 (N.D. Ill. June 24, 2019) (conspiracy to possess with intent to distribute more than 50

---

[3] As the government notes, some other courts to consider the question have concluded that such defendants were ineligible for relief under the First Step Act. *See* Opp'n to FSA Mot., Doc. No. 1489, at 5–6.

[4] The defendant in *Allen* pled guilty to the same charge as Luna: conspiracy to distribute five kilograms or more of powder cocaine and 50 grams or more of cocaine base. *Allen*, 384 F. Supp. 3d at 239. The court held that "Mr. Allen pleaded guilty to violating a statute applicable to an offense involving 50 grams or more of crack cocaine," and, because the "statutory penalty for [that] offense was modified by the Fair Sentencing Act," Allen was eligible for First Step Act relief. *Id.* at 241. In doing so, the court stated "[i]f the Fair Sentencing Act had been in effect when Mr. Allen was sentenced in 1998, his statutory offense of 50 grams or more would have carried a maximum sentence of 40 years rather than life[.]" *Id.* at 243. The change in maximum sentence would have reduced Allen's offense level and, after considering other applicable sentencing factors, the court reduced Allen's sentence to time served. *Id.* at 243–44. However, the court did not address, and it appears the government did not argue, the central question at issue here: whether the crime was still a "covered offense" even though the penalties for the powder cocaine portion were not changed by the First Step Act. It seems the court assumed, without deciding, that the crime was a "covered offense" because of the offense's crack cocaine allegation, despite the powder cocaine allegation.

grams of crack cocaine and more than 500 grams of powder cocaine); *United States v. Russo*, 2019 WL 1277507, at *1 (D. Neb. Mar. 20, 2019) (conspiracy to distribute crack cocaine and methamphetamine). For the foregoing reasons, I hold that Luna was convicted of a covered offense.

    B. <u>Scope of Relief</u>

Luna argues that although his conviction on count six is not a "covered offense" and, therefore, does not itself entitle him to relief under the First Step Act, his covered offense, count one, entitles him to a plenary resentencing on both counts.[5] *See* Mem. in Supp., FSA Mot., Doc. No. 1480. I have previously determined—including with respect to Luna's co-defendant—that a defendant who is entitled to relief under the First Step Act for a covered offense is also entitled to a full resentencing on related convictions. *See, e.g.*, *Medina*, 2019 WL 3769598, at *1; *United States v. Felix DeJesus*, 2019 WL 5997336, at *1 (D. Conn. Nov. 1, 2019). I believe that basic principles of statutory interpretation, the interplay between section 404(b) of the First Step Act and the Sentencing Guidelines, and fundamental considerations of fairness compel me to conduct a plenary resentencing.

    1. *Statutory Interpretation*

Courts are split on whether eligibility for relief under the First Step Act for a covered offense entitles a defendant to a full, plenary resentencing if the defendant is also convicted of uncovered offenses. Some courts limit resentencing to only the covered offense. Most of those courts have reasoned that a motion under section 404(b) implicates 18 U.S.C. § 3582(c)(1)(B), which permits a court to "modify an imposed term of imprisonment to the extent [] expressly

---

[5] Note, again, that Luna has already served his full sentence on count twelve.

permitted by statute." Because the First Step Act does not "expressly permit" a plenary resentencing, the argument goes, defendants are entitled to a sentence modification only on the covered offense.[6]

I conclude that the First Step Act does not compel me to treat a defendant's motion under section 404(b) of the First Step Act as one for a modification under section 3582(c)(1)(B). In fact, I conclude that basic principles of statutory interpretation *preclude* me from doing so. Courts that have construed defendants' section 404(b) First Step Act motions as ones brought under section 3582(c)(1)(B), in my view, have not adequately explained why they do so. For instance, in *Davis*, the court explained that it "had construed Davis's motion as one brought under 18 U.S.C. § 3582(c)(1)(B)" and cited Docket No. 777. 2019 WL 1054554, at *2. In Docket No. 777—a one-and-a-half page order—the *Davis* court simply concluded: "Although not specified, this Court construes Davis's motion as one brought under 18 U.S.C. § 3582(c)(1)(B), which permits modification of an imposed term of imprisonment to the extent expressly permitted by statute."

I believe it is incorrect to conflate motions brought under section 404(b) of the First Step Act with the modification procedure articulated in section 3582(c)(1)(B). First, section 404 of the First Step Act does not mention section 3582(c)(1)(B). Second, section 404(b)'s use of the verb "impose"—as opposed to, for instance, "reduce," or "modify"—indicates that the district court may conduct a plenary resentencing, which is different than the "modification" contemplated by section 3582(c)(1)(B). "Language used in one portion of a statute . . . should be deemed to have the same meaning as the same language used elsewhere in the statute." *United*

---

[6] *See, e.g.*, *Davis*, 2019 WL 1054554, at *2; *Martin*, 2019 WL 2289850, at *3; *United States v. Crews*, 385 F. Supp. 3d 439, 444 (W.D. Pa. May 24, 2019); *United States v. Rivas*, 2019 WL 1746392, at *3 (E.D. Wis. Apr. 18, 2019); *United States v. Barber*, 2019 WL 2526443, at *3 (D.S.C. June 19, 2019).

*States v. Daugerdas*, 892 F.3d 545, 556 (2d Cir. 2018) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993)). Here, "impose" is used twice in section 404(b) of the First Step Act, just 28 words apart—in the very same sentence. *See* First Step Act § 404(b). The first time, "impose" refers to the court's initial sentencing, which is by its nature plenary. The second time, "impose" refers to the resentencing. A well-accepted canon of statutory interpretation thus supports plenary resentencing under section 404(b).

"[A] logical extension of the principle that individual sections of a single statute should be construed together" is the statutory canon of *in pari materia*, which instructs that "a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972). In the context of sentencing statutes, the word "impose" generally refers to plenary sentencings. For instance, the word "impose" (or its variant) appears throughout 18 U.S.C. § 3553. *See, e.g.*, 18 U.S.C. § 3553(a) (four times); 18 U.S.C. § 3553(b) (seven times); 18 U.S.C. § 3553(c) (four times); 18 U.S.C. § 3553(d) (four times); 18 U.S.C. § 3553(e) (three times); 18 U.S.C. § 3553(f) (one time); *see also Rose*, 379 F. Supp. 3d at 234 ("The context surrounding the use of the verb 'impose' in the First Step Act suggests that the word-choice was not accidental."). The word "impose" also appears, for instance, in 18 U.S.C. § 3661, which describes the information that a sentencing judge may consider when sentencing a particular defendant. *See* 18 U.S.C. § 3661. Neither "reduce" nor "modify" appears even once in sections 3553 and 3661.

In contrast, the words "reduce" or "modify" refer to other, more limited procedures, and there is often a clear distinction between those verbs and "impose." For instance, in 18 U.S.C. § 3582(c), courts are given authority (under certain circumstances) to "modify" or "reduce" a sentence of imprisonment already "imposed." 18 U.S.C. § 3582(c)(1). Congress could have

11

phrased that limited authority as one to "impose a reduced sentence" or to "impose a modified sentence"; instead, in section 3582(c)(1), Congress gave courts limited authority to "modify" or "reduce" an "imposed term of imprisonment." *Id.* Section 404(b) of the First Step Act allows me to *impose a reduced sentence*; that authority is legally distinct from modifying an imposed term of imprisonment.

A number of courts agree that section 404(b) of the First Step Act is entirely distinct from section 3582(c)(1) and also focus on Congress's use of the verb "impose" in the former and that verb's absence in the latter. For example, in *United States v. Payton*, the court ordered a plenary resentencing because "[s]ection 404(b)'s use of the term 'impose' distinguishes a resentencing proceeding under the First Step Act from a sentence reduction under § 3582(c) which does not 'impose a new sentence in the usual sense.'" 2019 WL 2775530, at *4 (quoting *Dodd*, 372 F. Supp. 3d at 797–98). Although the *Payton* court was distinguishing between section 404(b) of the First Step Act and section 3852(c)(2), which uses the verb "reduce," the same distinction holds between section 404(b) of the First Step Act and section 3582(c)(1)(B), which also does not use the verb "impose" and, rather, uses the verb "modify." Further, in *Dodd*, the court wrote that because "section 404 of the First Step Act authorizes a reduction in sentence by its own terms, it would be effective even absent the existence of 18 U.S.C. § 3582(c)(1)(B) as complementary authority." 372 F. Supp. 3d at 797–98. *See also United States v. Biggs*, 2019 WL 2120226, at *3 (N.D. Ill. May 15, 2019); *Martin*, 2019 WL 2289850, at *5 (noting that Judge Chin, sitting by designation on the district court in *United States v. Erskine*, No. 05-cr-1234 (S.D.N.Y.), "suggested that there is a meaningful difference between the language and import of the [First Step Act] and § 3582 such that imposing a reduced sentence under [the First

12

Step Act] does not involve the same restrictions as § 3582"); *but cf. United States v. Hegwood*, 934 F.3d 414 (5th Cir. 2019) (rejecting similar argument based on "impose").

In addition, the lack of parallelism in section 404(b) of the First Step Act indicates that Congress contemplated a plenary resentencing. Section 404(b) reads, in relevant part: "A court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). The statute does not say that the court may impose a reduced sentence *only* on the covered offense. Congress did not require that the district judge "impose a reduced sentence *on the covered offense* as if sections 2 and 3 of the Fair Sentencing Act" were in effect. Congress could have done so—indeed earlier in the *same sentence* it used the phrase "imposed a sentence for a covered offense"—but it did not repeat that phrase when defining a court's resentencing authority. Reading in the additional requirement that a resentencing relate only to the covered offense "would impose an additional limitation not present in the text of the law." *United States v. Washington*, 2019 WL 4750575, at *3 (C.D. Ill. Sept. 30, 2019); *see also United States v. Mansoori*, 2019 WL 6700166, at *4 (N.D. Ill. Dec. 9, 2019). But the First Step Act places only two limitations on the district court's authority to resentence: (1) when "the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act"; and (2) when "a previous motion made under [section 404 of the First Step Act] to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." First Step Act § 404(c). "Nothing else in [s]ection 404 limits the Court's authority" to impose a reduced sentence on defendants convicted of a covered offense. *United States v. Mitchell*, 2019 WL 2647571, at *4 (D.D.C. June 27, 2019).

13

### 2. *Construction with Sentencing Guidelines*

Limiting resentencing to only the covered offense also conflicts with the Sentencing Guidelines and weakens a sentencing court's authority. A sentencing court must sentence the *defendant*, not the crime, and must craft a sentence that is "'sufficient but not greater than necessary' to fulfill the purposes of sentencing." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)). When resentencing is permitted by statute, allowing a court to look only at the covered offense, and not the entirety of the circumstances, undermines the great responsibility a sentencing court undertakes—to impose a fair sentence upon the defendant. At every sentencing, the court must consider the totality of the circumstances or it runs the risk of imposing a sentence that is greater than necessary to serve the purposes of sentencing. *See Mansoori*, 2019 WL 6700166, at *4 ("Put simply, the correction of one sentence may necessitate the unbundling of a defendant's overall sentences.").

When a defendant has been convicted of more than one count, the Sentencing Guidelines in various ways require a court to aggregate and bundle together those convictions. *See, e.g.*, U.S.S.G. § 3D1.1(a) (setting out rules for grouping counts of conviction); U.S.S.G. § 3D1.3 (explaining how to calculate a group's offense level when counts in that group result in different offense levels); U.S.S.G. § 3D1.4 (instructing how to calculate a *combined* offense level). In addition, when a sentencing judge sentences a defendant convicted of multiple counts, the judge imposes a single "total punishment." *See, e.g.*, U.S.S.G. § 3D1.5 ("Determining the Total Punishment"); U.S.S.G § 5G1.2(c) ("If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently . . . ."). Because the Sentencing Guidelines require a sentencing judge—in various ways—to unify counts of conviction and impose a logical, single sentence, numerous courts have noted that when a defendant is entitled to a resentencing under section 404(b) of the

First Step Act on one count of conviction, the defendant must be entitled to a plenary resentencing on all counts of conviction. *See, e.g.*, *Biggs*, 2019 WL 2120226, at *3 ("[T]he guidelines require the court to use a combined offense level for all counts. Because the potential reduced penalties for covered offenses could influence the range of recommended penalties for non-covered offenses, 'impos[ing] a reduced sentence as if . . . the Fair Sentence Act . . . were in effect' entails resentencing on all counts."); *United States v. Anderson*, 2019 WL 4440088, at *4 n.2 ("[B]ecause the court originally fashioned a sentence as a whole for both convictions, Defendant's eligibility on Count 1 . . . means the court has the authority and discretion to unbundle the sentence and impose[] a reduced sentence on both counts."); *United States v. Powell*, 2019 WL 4889112, at *6–7 (D. Conn. Oct. 3, 2019) (noting that the sentences there "all flowed from a single offense level and Sentencing Guidelines calculation determination, driven by the base offense level for the crack cocaine violation."); *United States v. Clarke*, 2019 WL 7499892, at *1–2 (N.D. Fla. Oct. 24, 2019) ("[W]here—as here—a defendant's crack offenses drove the entire sentencing package, a district court has the authority under the First Step Act to reduce sentences on all counts, including counts that charged offenses not 'covered' under the First Step Act."); *Mansoori*, 2019 WL 6700166, at *4 ("[A] limited resentencing conflicts with the Sentencing Guidelines, which require a court to consider multiple counts together."); *cf. Rose*, 379 F. Supp. 3d at 233 ("The text of the First Step Act, read in conjunction with other sentencing statutes, requires the Court to consider all relevant facts, including developments since the original sentence."); *id.* at 229–30 (noting that constraining the First Step Act would, in effect, "preclude defendants from seeking relief" based on considerations "that may have had little significance" when they were originally sentenced).

Indeed, in this very case, all three of Luna's counts of conviction were grouped together under the Sentencing Guidelines §§ 3D1.2(c) and (d). *See* PSR, Doc. No. 1463-2, at ¶ 35. And the guideline applicable to counts one and six was used because it produced the higher offense level. *See id.* In Luna's case, the base offense level of 36 was driven by his conviction on count one. *See id.* at ¶ 36. At Luna's sentencing, I noted that my sentencing determination was based in the main on "the quantity of the drugs, because the base offense level alone," without any enhancements, put Luna into the guidelines range I was considering. *See* Sentencing Tr., Doc. No. 1142, at 148. Thus, when I sentenced Luna on all three counts of his conviction, I relied heavily on the offense level calculated under the Guidelines, which in turn had been calculated based, in large part, on Luna's conviction on count one. And when I imposed a "total punishment" on Luna, I focused on count one because it carried the highest statutory maximum (life), as the Guidelines instruct me to do under section 5G1.2(c). Given how interrelated Luna's three counts of conviction were in his original sentencing—and given the particular importance of count one—it would be illogical and unfair (and in substantial tension with the Sentencing Guidelines) to limit Luna's resentencing to only his conviction of a covered offense. Limiting Luna's resentencing in that way would be like detaching one leg of a three-legged stool, re-examining and re-crafting its length, then re-attaching it to the same stool without considering the length of the other two legs, and expecting the stool to stand.

3. *Fundamental Fairness*

The First Step Act grants broad discretion to judges to decide whether to impose a reduced sentence, and I believe that authority should be read in the most comprehensive way possible, consistent with the remedial purpose of the First Step Act. Interpreting the First Step Act to have only a limited application would constrain the judicial discretion that the Act

16

expressly authorizes.  More specifically, no district judge is required to grant a defendant relief under section 404 of the First Step Act.  Thus, a district judge can always deny a defendant's motion under section 404(b) of the the First Step Act.  But, limiting the application of the First Step Act when judges *grant* section 404(b) motions would dilute Congress' intent and would undermine the consistent understanding that ambiguities should be resolved in favor of the defendant.  *See Rose*, 379 F. Supp. 3d at 229; *Martin*, 2019 WL 2571148, at *2.

The First Step Act provides that a defendant can be resentenced as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time of the defendant's offense.  *See* First Step § 404(b).  Had section 2 of the Fair Sentencing Act been in effect at the time of Luna's offense, Luna would have been subjected to lesser penalties based on the quantity of crack cocaine and would very likely have received a lesser sentence on count one.  Consequently, he also would have very likely been given a lesser sentence on count six.  Luna should get the full benefit of the First Step Act's remedial purpose.  Accordingly, I hold that he is entitled to a plenary resentencing.

### III. Conclusion

For the foregoing reasons, Luna's motion for resentencing, pursuant to the First Step Act (doc. no. 1462) is **granted**.  The clerk shall schedule a prompt resentencing.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of January 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge